**HUNTER PYLE, SBN 191125**
**TANYA P. TAMBLING, SBN 262979**
**KATIE FIESTER, SBN 301316**
HUNTER PYLE LAW
505 14th Street, Suite 600
Oakland, California 94612
Telephone: (510) 444-4400
Facsimile:  (510) 444-4410
Emails: hunter@hunterpylelaw.com;
        ttambling@hunterpylelaw.com;
        kfiester@hunterpylelaw.com

Attorneys for Plaintiff
DAVID AZAMEY

**SEYFARTH SHAW LLP**
Justin Curley (SBN 233287)
jcurley@seyfarth.com
Steven Wong (SBN 293343)
stewong@seyfarth.com
560 Mission Street, Suite 3100
San Francisco, CA 94105
Telephone: (415) 397-2823
Facsimile:  (415) 397-8549

Attorneys for Defendants
ABBOTT LABORATORIES and
ST. JUDE MEDICAL, CARDIOLOGY DIVISION, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID AZAMEY,<br><br>        Plaintiff,<br><br>    vs.<br><br>ABBOTT LABORATORIES, an Illinois corporation dba Abbott Laboratories Inc, (ALI), ST. JUDE MEDICAL, CARDIOLOGY DIVISION, INC., and DOES 1 through 25, inclusive,<br><br>        Defendants. | Case No.: 25-cv-10072-SK<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:        July 13, 2026<br>Time:        1:30 p.m.<br>Ctrm:        via Zoom<br>Judge:        Hon. Sallie Kim |

**JOINT CASE MANAGEMENT STATEMENT**

Plaintiff DAVID AZAMEY ("Plaintiff") and Defendants ABBOTT LABORATORIES ("Abbott") and ST. JUDE MEDICAL, CARDIOLOGY DIVISION, INC. ("St. Jude") (collectively, "Defendants") (jointly, "the Parties") submit this Joint Case Management Statement following their initial case management conference on July 6, 2026, in advance of the July 13, 2026, Further Case Management Conference.

### 1. **Jurisdiction and Service**

*The basis for the court's subject matter jurisdiction over Plaintiff's claims and defendant's counterclaims, whether any issues exist regarding persona jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.*

Plaintiff commenced this action in the Superior Court of the State of California for the County of Alameda on October 17, 2025. Defendants removed this action to this United States District Court for the Northern District of California on November 21, 2025.

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. sections 1332 and 1441, as this is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs. Plaintiff is, and at all relevant times was, a citizen of the State of California. Defendants are, and at all relevant times were, citizens of the States of Illinois and/or Delaware. Complete diversity therefore exists.

The Parties agree that venue is proper in this District pursuant to 28 U.S.C. sections 84(c), 1441(a), and 1446(a), and Civil Local Rule 3-2(c) and (d).

Plaintiff does not intend to serve any additional parties as defendants at this time.

Plaintiff reserves the right to seek leave of court to amend his Complaint to name additional entities and/or persons as defendants, should the identity of such defendants become known.

The parties have met and conferred about stipulating to Plaintiff filing a First Amended Complaint.  The parties do not anticipate that there will be any issues regarding the stipulation.

Defendants expressly reserve all rights, defenses, objections, and challenges with respect to any causes of action newly asserted in Plaintiff's First Amended Complaint. Defendants' stipulation to the filing of that pleading shall not constitute, nor be construed as, a waiver of any such rights, defenses, objections, or challenges.

2. **Facts**

*A brief chronology of the facts and a statement of the principal factual issues in dispute.*

a. ***Plaintiff's Position***

Plaintiff worked for Defendants for about seventeen years. Plaintiff was a loyal and hardworking employee of Defendants who rose through the ranks, enjoying several promotions.  Plaintiff's performance reviews were consistently excellent over the years (including a 100% performance rating in 2021, 94% in 2022, and 91% in 2023).  It was Plaintiff's intention to continue to work for Defendants until he retired. Plaintiff's most recent position was Senior Quality Manager.

In 2024, Plaintiff began to experience serious health conditions, including tingling and numbness in his feet and lower legs, instability in his ankles, imbalance, difficulty walking, fatigue and burning sensations in his lower limbs.  When Plaintiff initially informed Defendants of his condition, Defendants failed to engage in the interactive process. Instead, Defendants retaliated against Plaintiff by criticizing his leadership capabilities in a performance memorandum.

After Plaintiff's disabilities progressed and worsened, he requested leave under the California Family Rights Act (CFRA)/ Family Medical Leave Act (FMLA) from August 8 to December 9, 2024. Defendants granted this leave.  When Plaintiff's protected leave was exhausted, he requested to work from home for 90 days as an accommodation.  Defendants only approved a 30-day work from home accommodation and began to retaliate against Plaintiff in a number of different ways, including by scrutinizing Plaintiff's work, micromanaging him, and giving Plaintiff the worst performance rating of his career (a 66% rating).  Despite realizing that Plaintiff may require additional accommodations, Defendants failed to engage in a good faith interactive process.  They also delayed approving reasonable work from home accommodation requests and papered his file in an attempt to justify terminating Plaintiff for performance-related issues.

In April 2025, Plaintiff received a diagnosis of a rare autoimmune disease.  To treat the disorder, Plaintiff required infusions three to four days a week for a period of six weeks.

On April 29, 2025, Plaintiff applied for FMLA/CFRA leave for a second time. Defendants informed Plaintiff that his leave was exhausted, but invited him to submit a "future claim." Plaintiff discussed submitting the appropriate paperwork with Defendants' third party administrator, Sedgwick.

Plaintiff requested the necessary paperwork on May 14, 2025. Defendants terminated Plaintiff on May 15, 2025, but did not issue his last and final paycheck until May 22, 2025.

Defendants never put Plaintiff on a Performance Improvement Plan ("PIP") even though that is Defendants' standard protocol prior to terminating an employee. Defendants also did not consider demoting Plaintiff even though HR floated this option, particularly in light of Plaintiff's longevity, loyalty and success with Defendants.

### b. *Defendant's Position*

Plaintiff asserts the following causes of action: (1) Retaliation (FEHA); (2) Retaliation (CFRA); (3) Failure to Prevent Discrimination & Harassment (FEHA); (4) Disability/Medical Condition Discrimination (FEHA); (5) Failure to Provide Reasonable Accommodation (FEHA); (6) Failure to Engage in Interactive Process (FEHA); and (7) Waiting Time Penalties.

Defendants deny each of Plaintiff's claims and deny that Plaintiff is entitled to any relief whatsoever. Plaintiff was not employed by Abbott Laboratories. St. Jude terminated Plaintiff for legitimate, non-discriminatory, and non-retaliatory reasons: specifically, for ongoing performance deficiencies despite prior coaching and counseling. A Performance Memo was issued to Plaintiff on June 14, 2024; Plaintiff did not meet the expectations of the position thereafter and additional performance concerns continued to arise. These concerns included a lack of leadership/communication/management oversight and delays with business-critical items. Plaintiff's lack of leadership negatively impacted his team by failing to provide strategic direction and motivation, resulting in a lack of unity and decreased morale. His poor communication skills led to misunderstandings and inefficiencies. Additionally, his tendency to take over tasks prevented team members from growing and developing their skills, stunting their confidence and capability. Plaintiff's resistance to new ideas stifled innovation, caused stagnation and frustration within the team. Overall, these issues hindered the team's performance, morale, and development. Defendants deny that placing an employee on a PIP is mandatory or standard practice prior to termination (but maintain that in any event, Plaintiff received a Performance Memo). Defendants further assert affirmative defenses, including statute of limitations, failure to exhaust administrative remedies, failure to mitigate damages,

and same-decision defenses. Defendants contend that St. Jude engaged in the interactive process, provided reasonable accommodations, and timely paid all wages due.

### 3. Legal Issues

*A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.*

- Whether or to what extent Defendants violated the California Fair Employment and Housing Act ("FEHA") by discriminating against Plaintiff based on disability, failing to provide reasonable accommodations, failing to engage in the interactive process, or retaliating against Plaintiff for requesting an accommodation;

- Whether or to what extent Defendants failed to take all reasonable steps to prevent discrimination or harassment in violation of the FEHA;

- Whether or to what extent Defendants retaliated against Plaintiff for exercising his rights under the California Family Rights Act ("CFRA");

- Whether or to what extent Defendants terminated Plaintiff's employment for legitimate, non-discriminatory, and non-retaliatory business reasons, primarily Plaintiff's performance;

- Whether or to what extent Defendants failed to timely pay Plaintiff's last and final paycheck pursuant to California Labor Code sections 201– 203;

- Whether Plaintiff suffered any economic or non-economic damages as a result of Defendants' alleged conduct;

- Whether Abbott Laboratories employed or jointly employed Plaintiff; and

- Whether any officer, director, or managing agent of Abbott Laboratories or St. Jude Medical, Cardiology Division, Inc. acted with malice, oppression or fraud with respect to Plaintiff.

### 4. Motions

*All prior and pending motions, their current status, and any anticipated motions.*

There are currently no prior or pending motions.  The parties will file Motions in Limine prior to trial.

#### a. Plaintiff's Anticipated Motions

Plaintiff does not anticipate filing any dispositive motions.  However, Plaintiff intends to amend his complaint as stated above.

**b. *Defendants' Anticipated Motions***

Aside from any discovery motions that may arise, Defendants anticipate filing a motion for summary judgment or partial summary judgment on each of Plaintiff's claims as well as on the issue of punitive damages. Defendants will seek to bifurcate damages if the claim is not dismissed on summary judgment.

**5. Amendment of Pleadings**

*The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.*

Plaintiff intends to amend his complaint to add a cause/ or causes of action arising out of the FMLA and request liquidated damages as well. The Parties have met and conferred extensively about this issue. Defendants are currently reviewing Plaintiff's request to file a First Amended Complaint to add two additional claims for FMLA interference and FMLA discrimination, and expect to stipulate to Plaintiff's amendment to add these two additional claims.

**6. Evidence Preservation**

*A brief report certifying that the parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirming that the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. See ESI Guidelines 2.01 and 2.02, and Checklist for ESI Meet and Confer.*

The Parties have reviewed the Guidelines Relating to Discovery of Electronically Stored Information ("ESI") and have met and conferred pursuant to Federal Rule of Civil Procedure (FRCP) 26(f) regarding reasonable and proportionate steps to preserve evidence relevant to the issues reasonably evident in this action.

**7. Disclosures**

*Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26 and a description of the disclosures made. For ADA and employment cases, see General Order Nos. 56 and 71.*

Initial disclosures under Fed. R. Civ. P. 26 and General Order 71 have been exchanged. The parties are meeting and conferring regarding the Initial Disclosures and anticipate resolving outstanding issues without involving the Court.

**8. Discovery**

*Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, a brief report on whether the parties have considered entering into a stipulated e-discovery order, a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f), and any identified discovery disputes*

No formal discovery has been taken to date. The Parties anticipate the below written discovery will be completed by January 2027.  The parties are meeting and conferring about scheduling depositions.  The parties anticipate that depositions will begin in the fall of 2026.

### a. *Plaintiff's Position*

Plaintiff agrees that no changes should be made in the limitations on discovery imposed by the Federal Rules of Civil Procedure and/or the Court's local rules. Plaintiffs intend to engage in the following discovery:

- **Written Discovery**

Written discovery including requests for admission, interrogatories, and requests for production of documents.

- **Depositions**

Depositions of Defendants' Person Most Qualified on a variety of topics, including, but not limited to Plaintiff's performance, termination, Defendants' leave and accommodation policies, Defendants' position that Plaintiff's performance was inadequate, and Plaintiff's leave and accommodation requests.  Plaintiff will also take the depositions of fact witnesses and decision-makers, including, but not limited to Karen Krouse (Plaintiff's supervisor) and Anayeli Coronel, and Defendants' experts.

If Defendants request that Plaintiff undergo a Mental Examination in connection with Plaintiff's alleged emotional distress damages, Plaintiff reserves the right to oppose this request.

### b. *Defendants' Position*

Defendants agree that no changes should be made to the limitations on discovery imposed by the Federal Rules of Civil Procedure and/or the Court's local rules.

On February 24, 2026, Defendant St. Jude Medical, Cardiology Division, Inc. electronically served its Requests for Production of Documents (Set One) and Interrogatories (Set One) on Plaintiff.

On May 5, 2026, during the parties' pre-mediation call with the mediator, Defendant agreed to Plaintiff's request to continue Plaintiff's discovery response deadline to a date after the parties' mediation on June 29, 2026. Following their unsuccessful mediation, the parties participated in a telephonic conference on July 1, 2026, during which Defendant agreed to Plaintiff's request to produce

responses to Defendant's written discovery requests by no later than August 15, 2026, based on Plaintiff's counsel's representation that they had a large number of motions coming due in July 2026. Furthermore, during this call, Defendant requested Plaintiff's available dates for deposition in September 2026, and at defense counsel's request, Plaintiff's counsel agreed to provide such dates during the week of July 6-10, 2026. Upon receipt of Plaintiff's availability, Defendant will promptly notice Plaintiff's deposition on a mutually available date.

Defendants anticipate taking additional depositions, including, at a minimum, of Plaintiff's treating physician and designated experts.  Defendants also anticipate requesting that Plaintiff undergo a Mental Examination in connection with Plaintiff's alleged emotional distress damages.

**9.  Class Actions**

*If a class action, a proposal for how and when the class will be certified.*

Not Applicable.

**10. Related Cases**

*Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.*

None known at this time.

**11. Relief**

*All relief sought through complaint or counterclaim, including the amount of any damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.*

*a.  Plaintiff's Position*

Plaintiff seeks the following relief: Declaratory judgment that Defendants' violations of law were willful. Plaintiff also seeks damages for past and future wage loss and benefits, emotional distress, liquidated damages, attorneys' fees and costs pursuant to Labor Code sections 201– 203, and Government Code sections 12940, *et seq.*, and 12945.2, pre-judgment and post-judgment interest, and punitive damages.

Plaintiff earned a base rate of $189,000 annually, a bonus of about $37,800 annually, RSUs worth about $40,000 annually, pension accrual of $31,000 annually (plus growth over time), $8,000 for annual retiree health care benefits, and health insurance, which is roughly estimated to total about $350,000 annually.   Plaintiff's economic damages will be calculated based on Plaintiff's annual salary

and benefits rate and any consequential or other damages incurred from the date of termination through trial. Emotional distress damages will be calculated after further investigation and discovery, including expert discovery.

### b. *Defendants' Position*

Defendants deny liability and contend any damages must account for Plaintiff's mitigation efforts and any pre-existing and concurrent sources of emotional distress. Defendants seek no affirmative relief.

## 12. Settlement and ADR

*Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including which ADR process option the parties have selected and a proposed deadline, or if the parties do not agree, each party's preferred option and timing, in compliance with ADR L.R. 3-5. In addition, the parties should include a description of key discovery or motions necessary to position the parties to negotiate a resolution.*

The Parties attended mediation with Scott Lawson on June 29, 2026.  The case did not resolve.

## 13. Other References

*Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.*

Not applicable.

## 14. Narrowing of Issues

*Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.  The parties shall jointly identify (in bold or highlight) one to three issues which are the most consequential to the case, and discuss how resolution of these issues may be expedited.*

None at this time.

## 15. Expedited Trial Procedure

*Whether this is the type of case that can be handled under the Expedited Trial Procedure of General Order 64, Attachment A. If all parties agree, they shall instead of this Statement, file an executed Agreement for Expedited Trial and a Joint Expedited Case Management Statement, in accordance with General Order No. 64, Attachments B and D.*

The Parties do not believe this type of case can be handled under the Expedited Trial Procedure of General Order No. 64.

## 16. Scheduling

*Proposed dates for completion of initial ADR session, designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.*

The Court has issued a trial schedule.

### 17. Trial

*Whether the case will be tried to a jury or to the court and the expected length of the trial.*

Plaintiff has demanded a trial by jury. Plaintiff estimates that the trial will last 7-10 court days. Defendants estimate that the trial will last 3-5 court days.

### 18. Disclosure of Non-party Interested Entities or Persons

*Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15. In addition, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.*

The Parties have filed the "Certification of Interested Entities or Persons" as required by Civil Local Rule 3-15.

Defendants certify that the following listed persons, associations of persons, firms, partnerships, corporations (including, but not limited to, parent corporations), or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding: Plaintiff David Azamey; Defendant St. Jude Medical, Cardiology Division, Inc.; St. Jude Medical, LLC; and Defendant Abbott Laboratories.

The Parties are not aware of any conflict, financial or otherwise, that the presiding judge may have with the parties to the litigation.

### 19. Professional Conduct

*Whether all attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.*

All counsel have reviewed the Northern District of California Guidelines for Professional Conduct.

### 20. Other

*Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.*

None.

**9**

**JOINT CASE MANAGEMENT STATEMENT**

DATED: July 6, 2026                    HUNTER PYLE LAW, PC


                                       By: /s/ Tanya Tambling
                                           Tanya Tambling
                                           Katie Fiester

                                       Attorneys for Plaintiff DAVID AZAMEY


DATED: July 6, 2026                    SEYFARTH SHAW LLP


                                       By: /s/ Steven Wong
                                           Justin Curley
                                           Steven Wong

                                       Attorneys for Defendant ABBOTT LABORATORIES and
                                       ST. JUDE MEDICAL, CARDIOLOGY DIVISION, INC.

**JOINT CASE MANAGEMENT STATEMENT**

***

## ATTESTATION

I, Tanya Tambling, attest pursuant to Northern District Civil Local Rule 5-1(h)(3) that all signatories on this document agree to the filing's content and have authorized this filing. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: July 6, 2026                                          /s/ Tanya Tambling
                                                                      Tanya Tambling